UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR REYNOSO,<br><br>                       Plaintiff,<br><br>        v.<br><br>J. ANAYA, et al.,<br><br>                       Defendants. | Case No.  2:24-cv-07041-DDP-JC<br><br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |

**I.  SUMMARY**

On August 20, 2024, Omar Reynoso ("Plaintiff"), a California inmate confined at California State Prison, Los Angeles County ("CSP-LAC"), who is proceeding *pro se* and has been granted leave to proceed without prepayment of filing fees ("IFP"), formally filed a Civil Rights Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against the following seven CSP-LAC employees, sued in their individual capacities: mail room supervisors (1) J. Anaya and (2) "Ms. Garcia"; mail room staff members (3) John/Jane Doe, (4) J. Walker, and (5) "M.L."; and "reviewing authorities" (6) D. Williams and (7) H. Moseley.  (Docket No. 1).  The Complaint asserts claims for violation of Plaintiff's First Amendment right to receive personal mail, his Eighth Amendment right to be free from cruel

and unusual punishment, and his Fourteenth Amendment right to "Life, Liberty, [and] Property" (construed as his right to due process), along with multiple state tort claims, based on allegations that the mail room staff mishandled and then lost a packet of important documents that his family had sent to him by certified mail, and that his subsequent efforts to obtain administrative relief were evaded or denied. (See Comp. at 6, 15-24).[1] He seeks declaratory, injunctive, and monetary relief. (Comp. at 7).

The Court has screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

**II.   THE COMPLAINT**

The Complaint, liberally construed, alleges the following:

Plaintiff is serving a sentence of fifteen years to life in prison, and he has been in custody for almost thirty-three years, since he was sixteen years old. (Comp. at 15).

On December 29, 2023, Plaintiff's cousin sent to him, by certified mail, a "Future Parole Plans Packet," as required for Plaintiff's upcoming parole hearing. (Comp. at 15). The packet, which Plaintiff had compiled with the support of his family and longtime girlfriend, consisted of letters of support, "Job offers – Proof of Employments [sic]," proof of residency, and a "Relapse Prevention Plan." (Comp. at 15).

On January 4, 2024, the CSP-LAC mail room staff, upon receiving the certified mail package, opened it, removed the packet, and returned the empty envelope to Plaintiff's cousin. (Comp. at 15-16; see also Comp. at 4, 43). A photocopy of the returned envelope reflects that it contained a note stating: "LETTER REMOVED FROM CARDBOARD MAILER[.] NO CARDBOARD

---

[1]Citations to the Complaint and its attachments refer to the page numbers assigned by the Court's official Case Management/Electronic Case Filing (CM/ECF) system.

ALLOWED [at] CSP-LAC." (Comp. at 46). The mail room staff did not notify Plaintiff that it was withholding his mail, as prison regulations required. (Comp. at 16). The mail room staff also did not place the packet in Plaintiff's central file for the parole board. (Comp. at 17). The staff instead "[m]isplaced and [l]ost" the packet. (Comp. at 16).

As a result, Plaintiff had to appear before the parole board without those essential documents, and thus he assertedly could not present an effective case for parole. (Comp. at 16-17). The parole board expressly noted Plaintiff's failure to present parole plans at the hearing, and the board proceeded to deny parole for another five years, while advising Plaintiff to "[p]repare comprehensive parole plans" for next time. (Comp. at 16-17, 50-51, 54).

Plaintiff has made "numerous" efforts to seek administrative relief regarding the mail room's errors, to no avail. (Comp. at 17-24). The mail room staff has failed to provide Plaintiff with the names of the staff members who were involved in receiving and handling Plaintiff's parole packet. (Comp. at 18). One mail room staff member, Defendant Walker, denied a request for such names while allegedly misrepresenting the facts by telling Plaintiff they had "no record of receiving any certified mail" for Plaintiff during the relevant period, and suggesting that Plaintiff instead address the issue directly with the U.S. Postal Service. (Comp. at 18, 63). Yet, Plaintiff and his family had already done so, and they had the tracking history and the returned envelope which both reflected that CSP-LAC had indeed received the package. (Comp. at 19, 43-47). Defendants Moseley and Williams, moreover, in denying grievances on this issue, both stated incorrectly that the envelope, as depicted in Plaintiff's submitted photograph, appeared to have been returned to the sender unopened and intact. (Comp. at 21-22, 27-28).

///
///
///

## III.   STANDARD OF REVIEW

### A.   The Screening Requirement

As Plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing Twombly, 550 U.S. at 555)).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that

1  plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive
2  plausibility").  A claim is "plausible" when the facts alleged in the complaint would
3  support a reasonable inference that the plaintiff is entitled to relief from a specific
4  defendant for specific misconduct.  Iqbal, 556 U.S. at 678 (citation omitted); see
5  also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A] [Section 1983]
6  plaintiff must plead that each Government-official defendant, through the official's
7  own individual actions, has violated the Constitution." (quoting Iqbal, 556 U.S. at
8  676)); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint
9  "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule
10  8 requirements (emphasis added)).  Allegations that are "merely consistent with" a
11  defendant's liability, or reflect only "the mere possibility of misconduct" do not
12  "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P.
13  8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face."
14  Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

15      At this preliminary stage, "well-pleaded factual allegations" in a complaint
16  are assumed true, while "[t]hreadbare recitals of the elements of a cause of action"
17  and "legal conclusion[s] couched as a factual allegation" are not.  Id. (citation and
18  quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014)
19  ("mere legal conclusions 'are not entitled to the assumption of truth'" (quoting
20  Iqbal, 556 U.S. at 678-79)), cert. denied, 574 U.S. 1077 (2015).  In addition, the
21  Court is "not required to accept as true conclusory allegations which are
22  contradicted by documents referred to in the complaint," Steckman v. Hart
23  Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and
24  "need not [] accept as true allegations that contradict matters properly subject to
25  judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979,
26  988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation
27  omitted).
28  ///

1  In general, civil rights complaints are interpreted liberally in order to give
2  *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and
3  internal quotation marks omitted). Nonetheless, a *pro se* plaintiff must still follow
4  the rules of procedure that govern all litigants in federal court, including the
5  Rule 8 requirement that a complaint minimally state a short and plain statement of
6  a claim that is plausible on its face. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.
7  1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se
8  litigants are bound by the rules of procedure." (citation omitted)), cert. denied, 516
9  U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954
10 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint
11 may not supply essential elements of [a] claim that were not initially pled."
12 (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks
13 omitted; ellipses in original)).
14 If a *pro se* complaint is dismissed because it does not state a viable claim, the
15 court must freely grant "leave to amend" if it is "at all possible" that the plaintiff
16 could fix the identified pleading errors by alleging different or new facts. Cafasso,
17 U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011)
18 (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en
19 banc) (citations and internal quotation marks omitted).

**B.     Section 1983 Claims**

21 To state a Section 1983 claim, a complaint must allege that a defendant,
22 while acting under color of state law, caused a deprivation of the plaintiff's federal
23 rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations
24 omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).
25 There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676.
26 (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of the City of New York, 436
27 U.S. 658, 691 (1978)). Hence, a government official may not be held liable under
28 Section 1983 unless the particular official's own actions caused the alleged

constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing Iqbal, 556 U.S. at 676), cert. denied, 571 U.S. 819 (2013). A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation. See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008). Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). "Sweeping conclusory allegations [regarding causation] will not suffice . . . ." Id. (citation omitted).

An individual "causes" a constitutional deprivation basically when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676). Under the latter theory, even absent "overt personal participation," a supervisor may be liable under Section 1983 if he or she created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires

7

1 subordinates to commit constitutional violations," and enforcement of the policy
2 (either by the defendant-supervisor or his/her subordinates) proximately caused the
3 plaintiff's constitutional injury.  OSU Student Alliance, 699 F.3d at 1076 (citing
4 Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S.
5 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013)
6 (supervisory officials may be held liable "even without overt personal participation
7 in the offensive act if supervisory officials implement a policy so deficient that the
8 policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a
9 constitutional violation'" (citation and internal quotation marks omitted)).

## IV. DISCUSSION

As indicated above, the Complaint asserts claims for violation of Plaintiff's First Amendment right to receive personal mail, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to "Life, Liberty, [and] Property" (construed as his right to due process), along with multiple state tort claims.  (See Comp. at 6, 8-14).  Plaintiff's Complaint is dismissed with leave to amend because, as explained below, it fails to state a viable federal claim for relief.

First, the Complaint fails to state a First Amendment claim.  Prisoners have a First Amendment right to send and receive mail.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, isolated incidents of mail interference or tampering, without evidence of improper motive or resulting interference with the inmate's rights to counsel or to access the courts, generally will not support a claim under Section 1983 for violation of an inmate's constitutional rights.  See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation[;] [r]ather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." (internal quotation and citations omitted)); Crofton v. Roe, 170 F.3d 957,

961 (9th Cir. 1999) (temporary mail delay or isolated incident of delay does not violate a prisoner's First Amendment rights (citing Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987))); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) ("isolated evidence" in which one piece of inmate's protected legal mail was opened by accident did not give rise to constitutional violation "without any evidence of improper motive or resulting interference with [inmate's] right to counsel or to access to the courts"); Evans v. Foss, 2017 WL 2572443, at *2, at *5 (E.D. Cal. June 14, 2017) (five letters lost over fourteen years, with no improper motive, is not a violation); Lopez v. Jaquez, 2012 WL 2930774, at *2 (N.D. Cal. July 18, 2012) ("Although intentional interference with the processing of inmate mail may state a claim under § 1983, the alleged isolated instances of possible interference here are insufficient to state a claim for which relief may be granted." (citing Smith, 899 F.2d at 944; Bach v. Illinois, 504 F.2d 1100, 1102 (7th Cir.), cert. denied, 418 U.S. 910 (1974))); Musquez v. Sepulveda, 2008 WL 2811503, at *1 (N.D. Cal. July 17, 2008) ("Although unfortunate, [a] few instances of lost mail do not amount to more than isolated incidents insufficient to state a First Amendment claim of mail interference." (citation omitted)). Here, Plaintiff has alleged that the mail room Defendants mishandled and lost a *single* incoming mail package, on *one* occasion. Notwithstanding the great importance of that mail package to Plaintiff, its loss does not amount to a First Amendment violation.[2]

---

[2] Although prisoners also have a right to have "properly marked *legal mail* opened only in their presence," Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017) (emphasis added), the mail at issue does not qualify as "legal mail," as that category is generally restricted to mail sent between attorneys and prisoners and mail sent from prisoners to the courts. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974) (mail from attorneys); Royse v. Superior Court, 779 F.2d 573, 574-75 (9th Cir. 1986) (outgoing mail to court). Additionally, insofar as the alleged conduct affected Plaintiff's parole hearing, "[t]he [First Amendment] right to access the courts does not extend to parole consultation/suitability hearings." Sherman v. Lizarraga, 2020 WL 731187, at *4 (E.D. Cal. Feb. 13, 2020), report and recommendation adopted, 2020 WL 1234427 (E.D. Cal. Mar. 13, 2020).

Second, Plaintiff's allegations do not support any viable Eighth Amendment claim. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citation and internal quotation marks omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002). A single disruption of Plaintiff's mail, however consequential it may have been, falls far short of this standard. Moreover, even to the extent that Defendants' conduct may have caused the denial of parole, that denial does not implicate the Eighth Amendment. See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); Swarthout v. Cooke, 562 U.S. 216, 220 (2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." (citing Greenholtz, 442 U.S. at 7)); Cavalier v. Newsom, 2020 WL 7318118, at *10 n.10 (S.D. Cal. Dec. 11, 2020) ("No violation of the Eighth Amendment occurs merely because a prisoner is determined unsuitable for release on parole during the service of an otherwise valid indeterminate prison term.").

Third, Plaintiff fails to state a claim for violation of his Fourteenth Amendment due process rights. In particular, Plaintiff's allegations regarding Defendants' mishandling of his mail suggest only that their actions were, at most, merely negligent (see Comp. at 15-17), which does not amount to a violation of due process. See Canales v. Macomber, 2023 WL 8790273, at *3 (S.D. Cal. Dec. 19, 2023) ("'[N]egligent' mishandling of an inmate's mail does not amount to a constitutional violation." (citing Daniels v. Williams, 474 U.S. 327, 334-35 (1986))); see also Murguia v. Langdon, 61 F.4th 1096, 1121 (9th Cir. 2023) ("Whether a person is injured in a custodial situation or not, the Court has been clear that mere negligence or mistakes on the part of the state actor does not give

rise to a constitutional claim." (citing Daniels, 474 U.S. at 333), cert. denied, 144 S. Ct. 553 (2024)).  Indeed, even if their actions had been intentional, Plaintiff alleges that they were done in violation of prison regulations, and therefore were unauthorized.  (See Comp. at 16, 19-20).  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  California law provides an adequate post-deprivation remedy in the form of tort claims against public officials.  See Cal. Gov't Code §§ 810-895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (holding that California Law provides an adequate post-deprivation remedy for any property deprivation); see also Stribling v. Wilson, 770 F. App'x 829, 830 (9th Cir. 2019) (dismissing claims that a prisoner was wrongfully deprived of personal property and noting that California law provides an adequate post-deprivation remedy).

  Similarly, while it is true that prisoners have a due process right to receive notice that their incoming mail is being withheld, see Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999); see also Prison Legal News v. Cook, 238 F.3d 1145, 1152-53 (9th Cir. 2001) (due process rights apply to withheld mail where prisoners had constitutionally protected right to receive the mail), "[o]nly if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983," Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002).  Where the lack of such notice "was unauthorized and contrary to prison policy," as appears to be the case here, there is no due process violation.  Id. at 973.  A violation of prison rules or regulations does not itself amount to a constitutional violation.  See Peralta v. Dillard, 744 F.3d 1076, 1087 (9th Cir. 2014) (mere failure to follow prison rules not enough to establish constitutional deprivation (citations omitted)), cert. denied, 574 U.S. 1073 (2015); Cousins v. Lockyer, 568 F.3d 1063,

11

1070 (9th Cir. 2009) (violations of "CDCR operations manual" or other "state departmental regulations," without more, "do not establish a federal *constitutional* violation" (citations omitted; emphasis in original)).

Fourth, to the extent Plaintiff's claims are predicated merely on Defendants' role(s) in reviewing or responding to Plaintiff's administrative requests, grievances, or appeals, Plaintiff has no constitutional right to a certain grievance procedure, and the processing or rejection of grievances or appeals, without more, cannot serve as a basis for Section 1983 liability.[3] See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure" (citation omitted)), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); see also Shallowhorn v. Molina, 572 F. App'x 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process" (citing Ramirez, 334 F.3d at 860)).

Finally, Plaintiff's state-law claims are subject to dismissal because, in the absence of a viable federal claim, it is appropriate for the court to decline to exercise supplemental jurisdiction over such claims. 28 U.S.C. § 1367(c); Velazquez v. City of Long Beach, 793 F.3d 1010, 1029 (9th Cir. 2015) (district

///

---

[3] While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the Complaint fails to state such a claim because Plaintiff does not plausibly allege that an actual injury resulted simply from any Defendant's failure to process or adequately respond to Plaintiff's grievances, or that any such misconduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim." Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (to establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

court may decline to exercise supplemental jurisdiction over claim if it has dismissed all claims over which it has original jurisdiction).

## V.     ORDERS[4]

In light of the foregoing, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within twenty-one (21) days of the date of this Order, Plaintiff must do one of the following:

1. File a First Amended Complaint which cures the pleading defects set forth herein;[5] or

2. Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

///

///

---

[4]The Court's order herein constitutes a non-dispositive ruling on a pretrial matter. To the extent a party disagrees with such non-dispositive ruling, such party may file a motion for review by the assigned District Judge within fourteen (14) days. See Local Rule 72-2.1. To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days. A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

[5]The Clerk is directed to provide Plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a First Amended Complaint if he elects to proceed in that fashion. Any First Amended Complaint must: (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – *i.e.*, it must include all claims on which Plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each Defendant did and how that individual's conduct specifically violated Plaintiff's civil rights; (g) for each claim asserted, specifically identify which Defendants are being sued and in what capacity; (h) not add Defendants or claims that are not reasonably related to the claims asserted in the Complaint; (i) include a title naming all the parties (Fed. R. Civ. P. 10(a)); and (j) set forth "each claim founded on a separate transaction or occurrence . . . in a separate count[.]" Fed. R. Civ. P. 10(b).

3. File a Notice of Intent to Stand on the Complaint, indicating Plaintiff's intent to stand on the Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action based upon such defects.

**Plaintiff is cautioned that his failure timely to file a First Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on the Complaint may be deemed Plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: April 7 2025

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

Attachments